1     WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Nathalie Faye Stroup,                    No. CV-16-01804-PHX-ESW

10                   Plaintiff,               **ORDER**

11   v.

12   Acting Commissioner of the Social Security
13   Administration,

14                   Defendant.

15

16

17

18          Pending before the Court is Nathalie Faye Stroup's ("Plaintiff") appeal of the

19   Social Security Administration's ("Social Security") denial of her claim for disability

20   benefits.  The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §

21   405(g).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the

22   pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

23   decision of the Commissioner of Social Security, with or without remanding the case for

24   a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge

25   jurisdiction. (Doc. 11).

26          After reviewing the Administrative Record ("A.R.") and the parties' briefing

27   (Docs. 18, 19, 20), the Court finds that the Administrative Law Judge's ("ALJ") decision

28   contains harmful legal error.  For the reasons explained in Section II below, the decision

is reversed and the case is remanded to the Commissioner of Social Security for an immediate award of benefits.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 404.1520(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to Step Two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to Step Three.

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

**B. Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

---

[2] *Parra*, 481 F.3d at 746.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  PLAINTIFF'S APPEAL

### A.  Procedural Background

Plaintiff, who was born in 1965, has worked as a medical assistant and admissions coordinator. (A.R. 34, 38, 54). In 2012, Plaintiff filed an application for disability insurance benefits. (A.R. 143-44). Plaintiff's applications alleged that on March 27, 2011, Plaintiff became unable to work due to chronic pancreatitis, fibromyalgia, migraines, pain, depression, and anxiety. (A.R. 61-62). Social Security denied the applications on August 22, 2012. (A.R. 98-100). In March 2013, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits. (A.R. 102-05).

Plaintiff sought further review by an ALJ, who conducted a hearing in October 2014. (A.R. 30-59).

In her December 4, 2014 decision, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. 12-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-6). On June 7, 2016, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

**B. The ALJ's Application of the Five-Step Disability Analysis**

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

**1. Step One: Engagement in "Substantial Gainful Activity"**

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 27, 2011. (A.R. 14). Neither party disputes this determination.

**2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments**

The ALJ found that Plaintiff has the following severe impairments: (i) depression and (ii) panic disorder. (A.R. 14). Plaintiff argues that the ALJ's finding that Plaintiff's fibromyalgia and headaches are not severe impairments rests on an improper rejection of the opinions of Plaintiff's treating physicians. (Doc. 18 at 16).

**3. Step Three: Presence of Listed Impairment(s)**

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 18). Neither party disputes the ALJ's determination at this step.

### 4.  Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but has the following non-exertional limitations:

> [Plaintiff] is limited to understanding, remembering and carrying out simple instructions.  She can perform simple, routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work); she is limited to simple work-related decisions and is limited to occasional interaction with supervisors and co-workers and never the public; and is limited to simple work-related decisions.

(A.R. 20).  Based on the ALJ's determination that Plaintiff is limited to simple, unskilled work, the ALJ found that Plaintiff is unable to perform her past relevant work.  (A.R. 24).

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by improperly weighing the opinions of certain medical sources and discrediting Plaintiff's subjective complaints.  (Doc. 18 at 16-31).  The Court finds that the ALJ committed harmful legal error in assessing Plaintiff's RFC.

### 5.  Step Five: Capacity to Perform Other Work

At the final step, the ALJ found that Plaintiff is able to perform other jobs existing in significant numbers in the national economy.   (A.R. 24-25).   Because the ALJ committed harmful legal error in assessing Plaintiff's RFC, the ALJ's determination at Step Five is also erroneous.

### C.  Plaintiff's Challenge at Step Four

#### 1.  The ALJ Failed to Give Clear and Convincing Reasons for Rejecting Plaintiff's Testimony Regarding Plaintiff's Alleged Impairments

When evaluating the credibility of a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a claimant must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a claimant meets the first step, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony about the severity of his or her symptoms by offering clear and convincing reasons that are supported by substantial evidence in the record. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the claimant's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a claimant's credibility, the ALJ can consider many factors including: a claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

On March 16, 2016, the Social Security Administration issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. That is, "[t]he change in wording is meant to clarify that

administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Although SSR 16-3p was issued after the ALJ's December 2014 decision, it is consistent with Social Security's prior policies and with prior Ninth Circuit case law. *Compare* SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). Because 16-3p clarifies rather than changes existing law,[3] the Court will consider the ALJ's evaluation of Plaintiff's subjective complaints in light of SSR 16-3p.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting her testimony regarding her subjective symptoms. (Doc. 18 at 29-31). Defendant argues that the ALJ's reasons for discrediting Plaintiff's symptom testimony do not need to be clear and convincing because the ALJ "identified evidence of malingering." (Doc. 19 at 4-6). While an ALJ need not make a specific finding of malingering, there must be "affirmative evidence suggesting . . . malingering" before an ALJ is relieved of his or her obligation to comply with the clear and convincing standard. *Carmickle*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (explaining that " the statement in *Robbins v. Social Security Administration,* 466 F.3d 880, 883 (9th Cir. 2006), suggesting that the ALJ must make a specific *finding* of malingering before the

---

[3]Administrative rules will not have retroactive effect unless (i) Congress expressly authorized the administrative agency to enact retroactive rules and (ii) the new agency rule states that it is retroactive. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A clarification of a regulation, however, does not raise issues about retroactivity. *See Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand," and does not raise issues of retroactivity); *see also Smolen*, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law . . . .").

clear-and-convincing-reasons standard applies is an anomaly in this Circuit's case law").

In support of Defendant's argument that the record contains evidence of malingering, Defendant cites a statement from the report of examining physician Melissa Linner, M.D., which notes that "[a]t time[s] [Plaintiff] purposefully displays an odd, generalized body twitch." (A.R. 397). Yet Dr. Linner also found that Plaintiff was "[p]ositive for nausea, dyspepsia, chest pain and shortness of breath associated with anxiety and panic and anxiety induced tremor in her hands." (*Id.*) (emphasis added). No medical source, including Dr. Linner, stated that Plaintiff was malingering. The Court does not find that Dr. Linner's notation regarding Plaintiff's display of a purposeful "odd, generalized body twitch" constitutes affirmative evidence of malingering.[4] *See Schow v. Astrue*, 272 F. App'x 647, 652 (9th Cir. 2008) (concluding that the findings of a brief examination that were "mixed at best" do not constitute affirmative evidence of malingering); *Wick v. Barnhart*, 173 F. App'x 597, 599 (9th Cir. 2006) (concluding that an ALJ's finding that the claimant's Waddell test indicated malingering was not supported by substantial evidence where the physician conducting the test "did not indicate how many positive Waddell signs [the claimant] demonstrated or whether they were attributable to malingering rather than psychological conditions"). After review, the Court does not find that the record contains affirmative evidence of malingering. Therefore, the ALJ's reasons for discounting Plaintiff's symptom testimony must be clear and convincing and supported by substantial evidence in the record. *Lingenfelter*, 504 F.3d at 1036. For the reasons discussed below, the Court finds that the ALJ's credibility determination fails to meet the clear and convincing standard.

---

[4] As additional support for the argument that Plaintiff is malingering, Defendant asserts that Plaintiff's statement to Dr. Linner that she physically feels okay and that her main concerns are her "emotional problems" contradicts Plaintiff's reports to Social Security, such as stating that she has migraine headaches every day. (Doc. 19 at 4-5). Plaintiff, however, reported to Dr. Linner that she suffers "chronic daily headaches for the last seven years." (A.R. 397). Plaintiff also reported to Dr. Linner that she has generalized myofascial discomfort within her bilateral upper arms, thighs and hips, and that "[s]he does not drive because of her medications and it hurts her arms." (A.R. 396-97). Reading the record as a whole, Plaintiff's statement to Dr. Linner that she "physically feel[s] okay," does not constitute affirmative evidence of malingering.

### i. Alleged Symptoms Pertaining to Plaintiff's Mental Impairments

The ALJ stated that "[i]n terms of the claimant's alleged mental impairments, there is insufficient evidence to support a finding of greater limitation than provided for in the claimant's residual functional capacity." (A.R. 21). Although the ALJ found that Plaintiff's depression would cause "mental limitations in performing work activities," the ALJ concluded that "the evidence does not support a finding of greater limitation than provided for in the residual functional capacity." (*Id.*). The ALJ supports this conclusion by citing two treatment records from emergency room visits and two records from Plaintiff's primary care physician, Dr. Jeannie Evans.

The ALJ first discusses treatment records from an October 2011 emergency room visit at Payson Regional Medical Center. (*Id.*). The ALJ explains that the treatment records indicate Plaintiff's "behavior was appropriate and she was normally interacting with care givers and she was alert and oriented x3 (1F:9)." (*Id.*). While an assessment at 9:57 indicates that Plaintiff "[a]ppears to be normally interacting with care giver(s) or others that are present" and "[p]atient is alert and oriented x3," a physical assessment at 11:00 states "[p]atient in moderate distress" and "[p]atient appears moderately anxious." (A.R. 233, 237).

Next, the ALJ states that "[d]uring a subsequent visit to the emergency department in February 2012, the claimant's affect was normal and she was alert and oriented to person, place and time despite presenting with symptoms of pain to an emergency room in the middle of the night (1F:106)." (A.R. 21). However, the treatment notes from that visit also states: "Patient in severe distress. Patient appears nearly incapacitated with anxiety." (A.R. 334).

Third, the ALJ observes that in 2014, Dr. Evans gave Plaintiff a copy of a book directed at adult daughters of alcoholics. (A.R. 21-22, 417). The ALJ found that this "suggest[s] Dr. Evans did not feel more directed mental therapy was warranted for the degree of symptoms being exhibited by the claimant." (A.R. 22). An ALJ's speculation does not constitute substantial evidence, let alone clear and convincing evidence. *See*

*Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (an ALJ's "concerns and speculation" regarding the effects of a claimant's substance abuse did not constitute substantial evidence supporting the rejection of examining psychologist's opinion); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (holding that an ALJ improperly rejected treating and examining physicians' opinions where the rejection was based on "unsupported and unwarranted speculation").

Finally, the ALJ notes that records from a follow-up visit in June 2014 with Dr. Evans indicate that Plaintiff was oriented to time, place, person, and situation, had normal insight, exhibited normal judgment, and demonstrated appropriate mood and affect. (A.R. 22). These notes were from the "Physical Exam" section of the treatment record. (A.R. 414). Under the "History of Present Illness" section, Dr. Evans states "[t]he patient presents with anxious/fearful thoughts, depressed mood, difficulty concentrating, difficultly falling asleep, difficulty staying asleep, diminished interest or pleasure, fatigue, racing thoughts and restlessness but denies excessive worry." (A.R. 412).[5]

Contradictions between the record and a claimant's testimony can be a valid reason for discrediting the claimant's symptom testimony. *Smolen*, 80 F.3d at 1284. The Court, however, does not find that the above records cited by the ALJ, read as a whole, contradict Plaintiff's testimony. The cited records therefore do not constitute a valid basis for discounting Plaintiff's testimony.

In support of the ALJ's adverse credibility finding, Defendant asserts that "the ALJ and the State agency physicians also noted that Plaintiff engaged in activities of daily living that were inconsistent with her extreme allegations, such as working with horses and exercising more regularly (Tr. 16, 17, 83)." (Doc. 19 at 7). The ALJ did not discuss Plaintiff's activities of daily living in explaining why she found Plaintiff's

---

[5] While Dr. Evans also notes that "[t]here is improvement of initial symptoms," the Ninth Circuit has explained that "[c]ycles of improvement and debilitating symptoms are a common occurrence" and "a few isolated instances of improvement over a period of months or years" should not be used as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

symptom testimony not credible. Rather, in finding that Plaintiff's fibromyalgia is non-severe at Step Two of the disability analysis, the ALJ discussed a notation from Dr. Cool's records "demonstrating that claimant was trying to do **more** exercising regularly, was working with her horses and doing more horse work in October 2012 and that her pain was alleviated with oxycodone (8F:4)." (A.R. 16) (emphasis in original). The ALJ also cited this notation in explaining why she gave Dr. Cool's opinions no weight. (A.R. 17). Regardless of whether the Court may infer from the ALJ's decision that the ALJ discounted Plaintiff's testimony on the basis of her activities of daily living, the ALJ's decision does not explain how Plaintiff's daily activities translate to the ability to sustain competitive employment on a full-time basis. *See Garrison*, 759 F.3d at 1016 (stating that the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

Further, the ALJ's decision mischaracterizes Dr. Cool's October 2012 treatment note. The note states that while Plaintiff "is *trying* to do more exercising regularly" and works with her horses in the morning, Plaintiff "needs to nap from 12-3 every after noon." (A.R. 404) (emphasis added). The note also states that oxycodone helps Plaintiff's pain only for "about 2 hours." (*Id.*). Finally, the note states that Plaintiff "is not sleeping well," "is having many breakdowns and crying spells," is "tearful, anxious, depressed," and has "limited insight and judgement." (*Id.*).

In arguing that the Court should uphold the ALJ's credibility determination, Defendant also discusses a number of statements the ALJ made in explaining why she discounted the opinions of Drs. Cool, Evans, and Joseph. (Doc. 19 at 8-9). For instance, in discounting Drs. Cool, Evans, and Joseph's opinions, the ALJ stated that the record reflects that Plaintiff has had conservative treatment. (A.R. 17, 22, 23). "However, the fact that treatment may be routine or conservative is not a basis for finding subjective

symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015) (citing *Lapeirre–Gutt v. Astrue,* 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").  Not only does the ALJ not specifically cite Plaintiff's treatment history as a reason for discounting Plaintiff's symptom testimony, the ALJ does not discuss what additional, more aggressive treatment options may be available.  The Court cannot speculate as to the grounds for the ALJ's conclusions.  *See Brown-Hunter*, 806 F.3d at 496 (9th Cir. 2015) ("[W]e cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.") (quoting *Treichler*, 775 F.3d at 1103).

Lastly, Defendant cites the portion of the ALJ's decision noting that there is a lack of objective evidence to support Dr. Cool's conclusions.  (Doc. 19 at 9 (citing A.R. 17)).  Although an ALJ may consider a lack of objective evidence as one element in his or her analysis, a claimant's testimony of disabling symptoms cannot be discredited "merely because [it is] unsupported by objective evidence."  *See Lester*, 81 F.3d at 834; *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").  Even if the Court inferred from the ALJ's decision that the ALJ discounted Plaintiff's symptom testimony on the basis of a lack of objective evidence, Plaintiff's testimony cannot be discounted on that sole basis.

### ii. Alleged Symptoms Pertaining to Plaintiff's Physical Impairments

The ALJ's decision acknowledges Plaintiff's testimony regarding chronic migraine headaches and other physical impairments.  (A.R. 21).  The ALJ's decision,

however, provides no specific reasons for discounting that testimony. Although the ALJ makes the general statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision," the Ninth Circuit has instructed that an "ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. The Court cannot affirm an ALJ's decision on a ground not asserted by the ALJ. *Brown-Hunter*, 806 F.3d at 492 ("A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the error was harmless.").

"Sheer disbelief" of the severity of a claimant's symptoms "is no substitute for substantial evidence." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The Court finds that the ALJ has failed to articulate specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding her symptoms.

### 2. The ALJ Failed to Provide Valid Reasons for Discounting the Opinions of Examining Psychologist Colin R. Joseph, Ph.D.

In weighing medical source opinions in Social Security cases, there are three categories of doctors: (i) treating doctors, who actually treat the claimant; (2) examining doctors, who examine but do not treat the claimant; and (3) non-examining doctors, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining doctor's opinion in favor of another doctor's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not

improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

On August 7, 2012, Colin R. Joseph, Ph.D evaluated Plaintiff. (A.R. 389-93). Dr. Joseph opined that Plaintiff's "emotional instability is rather severe and will interfere with cognitive processing. [Plaintiff] will likely find simple tasks to be overwhelming and respond with emotionality." (A.R. 392-93). Dr. Joseph also opined that Plaintiff can be expected to respond to minimal stress, such as that associated with a typical work environment, with a high level of anxiety and emotionality. If she were placed in such an environment she would have panic attacks more frequently and likely exhibit uncontrolled crying. I believe [Plaintiff's] report of recent employment failures is a good example of how she might function.

(A.R. 393).

In explaining why the ALJ gave Dr. Joseph's opinions "partial weight," the ALJ stated:

> First, [Dr. Joseph's] opinion provides conclusions about what the claimant cannot do, rather than what kind of work the claimant could do. Second, the restrictions rely heavily on a one-time snap-shot of very subjective communications from the claimant.

(A.R. 23). The above statements do not constitute specific and legitimate reasons for discounting Dr. Joseph's opinions.[6] An ALJ must consider the opinions of examining physicians and psychologists. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Lester*, 81 F.3d at 830. "By definition, an examining physician does not have an ongoing relationship with a claimant." *Henderson v. Astrue*, 634 F.Supp.2d 1182, 1192 (E.D. Wash. 2009). Moreover, Dr. Joseph's report reflects that in addition to personally evaluating Plaintiff, Dr. Joseph reviewed Plaintiff's medical records. (A.R. 389). Finally, while an ALJ may reject a

---

[6] As Dr. Joseph's opinions are contradicted, the specific and legitimate standard rather than the clear and convincing standard applies.

medical source's opinion if the opinion is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible,"[7] the ALJ did not properly discount Plaintiff's testimony as explained in the previous section.

As another reason for discounting Dr. Joseph's opinions, the ALJ stated that Plaintiff's performance on her mental status examination conducted by Dr. Joseph provides "clinical evidence [that] the claimant does not have marked restriction in understanding, carrying out and performing simple routine tasks (6F)." (A.R. 23). Yet Dr. Joseph explained that Plaintiff "does not exhibit impairment in memory function per se." (A.R. 392). Dr. Joseph explained that Plaintiff's "primary barrier to maintaining employment, from a psychological standpoint, will be emotional instability." (A.R. 393). Further, in the "Mental Status and Behavioral Observations" section of Dr. Joseph's report, Dr. Joseph noted that Plaintiff displayed "prominent psychomotor retardation," "became tearful upon sitting down in my office and remained tearful throughout; intermittently becoming overwhelmed with emotion." (A.R. 392). In addition, Dr. Joseph noted that Plaintiff incorrectly performed serial sevens, incorrectly spelled "world" backwards, and could only recall two out of three items following a brief delay. (*Id.*). Dr. Joseph explained that Plaintiff "does not exhibit impairment in memory function," but "presents as emotionally unstable, severely anxious and depressed; and these issues will interfere with cognitive processing." (*Id.*). The Court does not find that the ALJ's third reason for discounting Dr. Joseph's opinions is specific, legitimate, and based on substantial evidence in the record.

Finally, the ALJ stated that the "conservative treatment history and lack of episodes of decompensation despite a lack of professional therapy and periods of abstinence from psychotropic medication do not support Dr. Joseph's conclusions." (A.R. 23). The fact that Plaintiff has had limited mental health treatment is not a

---

[7] *Tommasetti*, 533 F.3d at 1041 (internal quotation marks and citation omitted); *Morgan*, 169 F.3d at 601; *see also Tonapetyan*, 242 F.3d at 1149.

sufficient sole reason to discount Dr. Joseph's opinions. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

For the above reasons, the Court finds that the ALJ failed to provide specific and legitimate reasons based on substantial evidence for assigning "partial weight" to Dr. Joseph's opinions. The ALJ's errors in weighing Plaintiff's symptom testimony and Dr. Joseph's opinions are harmful and alone require remand. The Court therefore does not address Plaintiff's arguments regarding the other alleged errors in the ALJ's decision.

### D. The Case Will Be Remanded for an Award of Benefits

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases." *Treichler*, 775 F.3d at 1101 n.5. The Ninth Circuit, however, has adopted a test to determine when a case should be remanded for payment of benefits in cases where an ALJ has improperly rejected claimant testimony or medical opinion evidence. *Id*. at 1100-01; *Garrison*, 759 F.3d at 1020. This test is commonly referred to as the "credit-as-true" rule, which consists of the following three factors:

1. Has the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion? *Treichler*, 775 F.3d at 1100-01.

2. Has the record been fully developed, are there outstanding issues that must be resolved before a disability determination can be made, or would further administrative proceedings be useful? *Id*. at 1101. To clarify this factor, the Ninth Circuit has stated that "[w]here there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*.

3. If the improperly discredited evidence were credited as true, would the ALJ be required to find the claimant disabled on remand? *Id*.; *Garrison*, 759 F.3d at 1020.

- 17 -

Where a court has found that a claimant has failed to satisfy one of the factors of the credit-as-true rule, the court does not need to address the remaining factors. *Treichler*, 775 F.3d at 1107 (declining to address final step of the rule after determining that the claimant has failed to satisfy the second step). Moreover, even if all three factors are met, a court retains the discretion to remand a case for additional evidence or to award benefits. *Id.* at 1101-02. A court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021. In *Treichler*, the Ninth Circuit noted that "[w]here an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." 775 F.3d at 1105.

After examining the record, the Court finds no outstanding issues of fact to be resolved through further proceedings. At the administrative hearing, the VE testified that based on Dr. Joseph's opinions, Plaintiff would not be able to retain employment. (A.R. 57-58). The VE's testimony establishes that if Dr. Joseph's opinions were credited-as-true, the ALJ would be required to find that Plaintiff is disabled. The Court does not find any material evidence in the record that creates serious doubt that Plaintiff is in fact disabled. Therefore, based on the record, the Court finds it inappropriate to remand the case for further proceedings. *See Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted). The Court will remand the case for an immediate award of benefits effective March 27, 2011 (the disability onset date).

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding this case to the Commissioner for an immediate award of benefits effective March 27, 2011.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 2nd day of August, 2017.

_____
Eileen S. Willett
United States Magistrate Judge